IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHANIE PETERMAN,          :     CIVIL ACTION
                             :     NO. 11-6265
     Plaintiff,              :
                             :
        v.                   :
                             :
SAMANTHA SAKALAUSKAS, et al.,:
                             :
     Defendants.             :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          OCTOBER 9, 2013

## I. INTRODUCTION

Plaintiff Stephanie Peterman ("Plaintiff") brought this suit seeking damages from Defendants Michael Martin (nee Erts) ("Mr. Martin") and Karen Martin ("Ms. Martin") (collectively "Martin Defendants"), Stephanie Peterman ("Mrs. Peterman"), John Doe-1, John Doe-2, and John Doe Corporation (collectively "John Doe Defendants"). Plaintiff's Complaint pleads two counts: (1) negligence against Defendants Mr. Martin, Stephanie Sakalauskas, and Doe-1; and (2) negligence against Defendants Ms. Martin, Doe-2, and John Doe Corporation. Compl., ECF No. 1.

Plaintiff's Complaint arises from a multicar accident on October 6, 2009. Plaintiff alleges she was driving her

automobile southbound on Route 1 through Middletown Township, Pennsylvania when she came to a stop due to traffic in front of her, and her car was then struck from behind by two vehicles. Compl. ¶ 17-18.[1]

Defendants contend that Plaintiff's injuries are not serious injuries within the meaning of the Pennsylvania Motor Vehicle Financial Responsibility Law ("PMVFRL"). Martin Defs. Answer. As Plaintiff elected the limited tort option on her insurance, unless her injuries are considered serious, her

---

[1]      Plaintiff alleges her vehicle was first struck by a vehicle owned and operated by Ms. Sakalauskas. Compl. ¶ 17. Plaintiff alleges that Ms. Sakalauskas' vehicle was then struck by a vehicle operated by Mr. Martin and owned by Ms. Martin. Id. ¶ 19. Plaintiff alleges that this collision caused Ms. Sakalauskas' vehicle to further damage Plaintiff's vehicle and to cause additional harm to Plaintiff. Id. Martin Defendants admit that the collision occurred. See Martin Defs.' Answer ¶ 19, ECF No. 5. Plaintiff alleged that a third vehicle, operated by John Doe-1 and owned by either John Doe-2 or John Doe Corporation, was involved in the accident. Compl. ¶ 20. At Plaintiff's request, John Doe Defendants have been dismissed from the case. Order Dismissing Claims Against John Doe Defs., ECF No. 36.

       While Plaintiff's complaint alleged that the impact between her vehicle and Mr. Martin's vehicle was indirect (in that he struck Defendant Sakalauskas' vehicle), she has also stated that the impact was direct. Compare Pl.'s Dep. 76:23-77:1 (stating during deposition that impact was direct); Compl. ¶ 19 (stating Mr. Martin's vehicle struck Ms. Sakalauskas' vehicle causing Ms. Sakalauskas' vehicle to "violently thrust[] . . . forward" into Plaintiff's vehicle"). Whether Mr. Martin's vehicle struck Plaintiff's vehicle directly or indirectly, however, is not relevant to determining the present Motion.

recovery for a motor vehicle accident is limited to economic damages.

Pending before the Court is Defendants' Motion for Partial Summary Judgment ("Motion").  ECF No. 37.  For the reasons that follow, the Court will deny Defendants' motion.

## II.  BACKGROUND[2]

At the time of the accident, Plaintiff was employed by Benchmark Therapies as an occupational therapist at Delaware Valley Veterans Home and served as the Director of Rehabilitation.  See Defs.' Mot. Summ. J., Ex. A, Pl.'s Dep. 23:19-25:24, May 25, 2012 (ECF No. 37-1).   Plaintiff had worked in that position for approximately seven months without any discipline for job performance.  See id. at 25:22-26:6.[3] Plaintiff claims to have typically worked fourteen to eighteen hours a day.  See id. at 24:19-25:8.  Her main responsibilities were to work as a physical therapist and treat patients.  Id.

_____

[2]      In accordance with the appropriate standard of review, see infra Part III, the Court views the facts in the light most favorable to the non-moving party.  As Defendants moved for summary judgment, the Court will initially construe the facts in the light most favorable to Plaintiff.

[3]      In addition, Plaintiff claims she occasionally worked weekends at Altoona Regional Health Systems when she was visiting her home.  See id. at 26:7-18.

In addition to her work as a therapist, Plaintiff also performed managerial duties including clerical tasks and human resource responsibilities.  See id. at 26:23-27:12.

Prior to the accident, Plaintiff was physically active and in good physical health.  In carrying out her work as a caregiver, she claims that she routinely lifted patients weighing upwards of 200 to 400 pounds.  See id. at 24:19-25:25. Plaintiff also typically ran several days a week, for a typical distance of eight miles.  See id. at 119:6-10.  Plaintiff enjoyed socializing with friends and going out for dinner, drinks, and dancing.  See id. at 121:1-24.  The current impairments were not previously existing conditions; even if there was some previously existing degenerative condition, what Plaintiff's evidence suggests is that it would have remained "asymptomatic indefinitely."  Pl.'s Resp. Defs.' Mot. Summ. J., Ex. E, Letter from Doctor Steven Mazlin, M.D., Regarding Stephanie Peterman (July 26, 2012) (ECF No. 39-6).

On October 6, 2009, Plaintiff was involved in a multi-car accident on Route 1 in Middletown Township, and she alleges that Defendants were at fault.  See Compl. ¶ 17-19; see also Pl.'s Resp. Defs.' Mot. Summ. J., Ex. B, Commonwealth Pa. Police Crash Reporting Form, Oct. 6, 2009, ECF No. 39-3; Pl.'s Dep. 66:9-67.  Immediately following the accident, Plaintiff was trapped in her vehicle and claims she was experiencing severe

pain.  Pl.'s Dep. 69:1-70:5.  Plaintiff was removed from her
vehicle by emergency personnel, and she was transported by
ambulance to St. Mary's Medical Center.  Id. at 80:17-89:21.
Plaintiff's evidence suggests that she was in shock and a great
deal of pain.  Id. at 89:22-90:24.  Plaintiff was treated in the
emergency room and was discharged.  Id. 89:22-91:16.

      Following the accident, Plaintiff alleges she has
several permanent injuries that will continue to cause her
varying levels of pain and limit her physical abilities.  A June
21, 2012 MRI showed "multiple disc bulges at C4-5, C5-6, C6-7,
T7-8, T9-10, T10-11, T11-12, T12-L1 and L2-3." Letter from
Doctor Mazlin (July 26, 2012), see also Pl.'s Resp. Defs.' Mot.
Summ. J., Ex. F, MRI Reports for Stephanie Peterman, 2-3, June
21, 2012 (ECF No. 39-6).  Plaintiff has presented evidence
supporting her claim that these injuries are permanent and will
continue to cause pain to the Plaintiff.  Letter from Doctor
Mazlin (July 26, 2012).  According to Plaintiff's doctor, "the
accident caused sprain injuries to [Plaintiff's] neck (cervical
spine), upper back (thoracic spine), and lower back (lumbar
spine) which are now permanent, and represent another generator
of chronic pain."  Id.

Plaintiff's treatment has been ongoing since 2009.[4] Plaintiff returned to St. Mary's Hospital on January 22, 2010 for an MRI.  See Pl.'s Resp. Defs.' Mot. Summ. J., Ex. C, Diagnostic Imaging Report (January 22, 2012), ECF No. 39-4. Beginning in late January, 2010, Plaintiff has been receiving chiropractic care at Complete Health & Chiropractic Center.  See Pl.'s Resp. Defs.' Mot. Summ. J., Ex. D, Letter from Doctor Richard Berkowitz, D.C., (September 24, 2011), ECF No. 39-5.

On February 9, 2010, Plaintiff began a course of treatment with neurologist Dr. Stephen Mazlin M.D.  See  Pl.'s Resp. Defs.' Mot. Summ. J., Ex. E, Letter from Doctor Steven Mazlin, M.D., Regarding Stephanie Davis (February 9, 2010), ECF No. 39-6.  Because Plaintiff claimed that her pain and other symptoms continued, Plaintiff went for additional MRI testing and diagnostic imaging studies on June 21, 2012.  See MRI Reports for Stephanie Peterman (June 21, 2012).  Plaintiff's pain management includes visiting doctors, the use of over the counter painkillers, yoga, water exercise, and other activities aimed at reducing her complained of pain and impairments.  See Pl.'s Dep. 118:1-18 (describing use of gym to rebuild muscles);

---

[4]      Plaintiff claims that her access to medical care has been restricted by her limited financial resources.  See, e.g., id. at 101:20-103:3 (explaining that Plaintiff was unable to receive certain treatments because she could not afford them).

see also id. (recounting use of yoga to manage pain and
symptoms); id. at 118:19-119:2 (explaining use of hot tub to
relieve pain); id. at 104:12-22 (discussing use of over the
counter pain killers); id. at 155:23-116:5 (stating Plaintiff
takes Advil every day for pain and Flexeril at night so she can
sleep).

According to Plaintiff, her injuries, and the
resulting impairments, have led to a significant decrease in her
employment options.  Following the accident, Plaintiff claims
she is no longer able to continue in her position as Director of
Occupational Therapy at Delaware Valley Veterans Home.  See id.
at 24:19-25:15 ("I had to quit my job").  Since then, Plaintiff
has taken a number of "limited duty" positions, most of which
have been temporary.  See id. at 40:6-48:17.  Plaintiff has
declined at least one full time position because she claims her
injuries do not permit her to perform the full range of duties
expected at such a position.  See id.  At the time of the
Motion, Plaintiff was working as an occupational therapy
assistant.  Id. at 47:1-48:10.  Plaintiff claims that her future
at her current employer and within her career in general is
uncertain due to her injuries and the accompanying impairments.
See id. at 48:13-17 ("I'm going to stay there as long as I can,
but at this point, . . . my doctors are telling me I definitely
need a new career").  Plaintiff's new employment situation also

comes with a decrease in salary of approximately $30,000.  See id. at 47:17-18.

Plaintiff asserts that her physical abilities and activities are now similarly limited.  According to Plaintiff, she is often unable to use her "left hand to manipulate objects."  Id. at 115:19-23.  Plaintiff no longer runs the eight miles she was accustomed to, and instead she runs only twice a week for only one to two miles each time.  See id. at 118:1-15. Plaintiff also alleges that she has difficulty sleeping and traveling.  See id. at 119:18-23.  Plaintiff contends that, as a result of her injuries, her social life has been restricted and she is no longer able to enjoy going dancing or going out for drinks with friends.  See id. at 121:1-24.  In fact, Plaintiff asserts that she has been forced to modify virtually every aspect of her life.  See id. at 120:16.

Under these facts, the Court will determine if Plaintiff's injuries, as alleged, are serious injuries within the meaning of the PMVFRL.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

"A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

In a diversity case, when faced with a motion for summary judgment, the federal courts follow federal law on

issues of procedure but apply the substantive rule of decision
from state law.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78
(1938); Garcia v. Plaza Oldsmobile Ltd., 421 F.3d 216, 219 (3d
Cir. 2005).

## IV.  DISCUSSION

The Court must first determine whether under federal
law a genuine dispute of material fact exists regarding the
injuries and impairments alleged by the Plaintiff.  If there is
no dispute, the Court must then determine under Pennsylvania law
if Plaintiff has introduced sufficient evidence to potentially
show (1) "[w]hat body function, if any, was impaired because of
injuries sustained in a motor vehicle accident" and (2) "[w]as
the impairment of the body function serious."  See Washington v.
Baxter, 719 A.2d 733, 740 (Pa. 1998) (citing DiFranco v.
Pickard, 398 N.W.2d 896, 901 (Mi. 1986)) (footnote omitted).
Summary judgment should not be granted unless "reasonable minds
could not differ on the issue of whether a serious injury had
been sustained" and thus serious injuries within the meaning of
the PMVFL.  Washington, 719 A.2d at 740.

A.    There is No Genuine Dispute of Material Fact

On the first issue the Court must consider, whether a
genuine dispute of material fact exists regarding the injuries
and impairments alleged by Plaintiff, the Court finds there is
not a dispute.  For purposes of this motion, Martin Defendants
appear to accept Plaintiff's alleged injuries as true and do not
materially deny the impairments they cause.[5]  Notably, Martin

---

[5]    The Court finds that, in their motion for summary
judgment, Defendants do not materially dispute that Plaintiff's
injuries stem from the motor-vehicle accident, or dispute the
existence of the injuries.  Defendants do argue that Plaintiff
has failed to produce medical evidence of what "restrictions,
limitations, or actual impairment was caused by the accident."
Defs.' Br. Supp. Summ. J., 4, ECF No. 39-1; see also Defs.' Br.
Supp. Summ. J., 2, ECF No. 38.  Notably, Defendants contend Dr.
Mazlin fails to specifically state that Plaintiff's injuries
"constituted an 'impairment of body function' or 'serious
impairment' such that it would prevent her from engaging in her
daily activities or qualify her impairment and limitations in
any other manner."  Defs.' Br. Supp. Summ. J. at 4-5.
Defendants also aver that Plaintiff did not miss significant
amounts of work and that Plaintiff's medical treatment has been
relatively conservative.  Id. at 5-6.

Defendants contend Plaintiff is still able to engage
in "numerous activities" including exercising, running, dining
out, getting out of bed, showering, getting dressed, driving,
shopping, walking, and taking a plane.  See id. at 6.  Finally,
Defendants argue that the examination conducted by Dr. Lefkoe
found that "Plaintiff's injuries from the accident resolved,"
"no further treatment was necessary" and "the Plaintiff did not
sustain a serious . . . impairment of a body function as a
result of the accident."  Id. at 6.  While Defendants conclude
there is insufficient evidence to establish Plaintiff has
sustained a serious injury and cannot recover non-economic
damages, they do not appear to dispute, for the purposes of the

Defendants do not dispute that the motor vehicle was the cause of any impairments the Plaintiff suffers.  As the motion for partial summary judgment raises a legal issue, and not a factual one, the Court will consider whether under these facts defendant is entitled to judgment as a matter of law.


B.   Legal Standard for Determining Serious Bodily Injury


Plaintiff elected the limited tort option on her insurance agreement.  See  75 Pa. Cons. Stat. Ann. §§ 1701 et seq. (West 2013).  Accordingly, it is undisputed that unless there is an applicable exception, she is prohibited from recovering for non-economic damages.  Id. § 1705(a)(i)(A). Plaintiff alleges that her injuries are serious injuries within the meaning of the PMVFL and thus under the exception within § 1705(d) which provides that the insured elector is limited to non-economic damages "[u]nless the injury sustained is a serious

_____

motion, that Plaintiff has actually suffered the injuries alleged.  Instead, the dispute is focused on whether or not the injuries are serious injuries within the meaning of the PMVFRL. Even if Defendants disputed the existence of the injuries, and the resulting impairments, such dispute would not affect the Court's denial of the Motion for Partial Summary Judgment.  Such a dispute would create a genuine dispute of material fact and, accordingly, the Court would still deny the Motion.

injury."  Plaintiff does not argue that any of the "other"
statutory exceptions apply. See id. § 1705(d)(1).

The Pennsylvania Supreme Court has held that, under
the PMVFRL, the "threshold determination" whether or not an
injury is a serious injury "was not to be made routinely by a
trial court judge [pretrial]. . . but rather was to be left to a
jury unless reasonable minds could not differ on the issue of
whether a serious injury had been sustained." Washington, 719
A.2d at 740.  The Washington court adopted Michigan's standard
for serious injury which defines a serious injury as a "serious
impairment of body function." Id. (citing DiFranco, 398 N.W.2d
at 901).

Under Pennsylvania law, the "'serious impairment of
body function' threshold contains two inquiries: a) What body
function, if any, was impaired because of injuries sustained in
a motor vehicle accident? b) Was the impairment of the body
function serious?." Id. at 740 (citing DiFranco, 398 N.W.2d at
901) (footnote omitted).  The court in Washington held that in
determining if the impairment is serious, the Court should
examine several factors including the "extent of the impairment,
the length of time the impairment lasted, the treatment required
to correct the impairment, and any other relevant factors." Id.
(citing DiFranco, 398 N.W.2d at 901) (footnote omitted).

Plaintiff's evidence should be sufficient to show that she "has suffered a <u>serious</u> injury such that a body function has been seriously impaired." <u>Washington v. Baxter</u>, 719 A.2d at 741 (emphasis in original).  The Pennsylvania Supreme Court has directed that the evidence of the injury must be sufficient to prove that "not only was there an injury, but that it was also serious, before allowing [Plaintiff] to present [Plaintiff's] case to the jury." <u>Id.</u>  The ultimate determination of whether the evidence establishes that the injury was serious, however, should be retained for the finder of fact unless reasonable minds cannot differ on the issue.[6]  <u>See</u> <u>id.</u> at 740.

---

[6]      "[W]e conclude that the legislative history [of the PMVFRL] does not support the view that the threshold determination of whether a serious injury has been sustained is to be made by the trial judge. In fact, we find that the legislature . . . indicated that the traditional summary judgment standard was to be followed and that the threshold determination was not to be made routinely by a trial court judge . . . but rather was to be left to a jury unless reasonable minds could not differ on the issue of whether a serious injury had been sustained." <u>Washington v. Baxter</u>, 719 A.2d at 741.

In applying <u>Washington</u>, courts in this district have looked for medical evidence to prove the existence, extent, and permanency of an injury.  <u>Sanderson-Cruz v. United States</u>, 88 F. Supp. 2d 388, 394 (E.D. Pa. 2000) (citations omitted).  An impairment, however, need not be permanent to be serious. <u>Washington</u>, 719 A.2d at 740 (<u>citing</u> <u>DiFranco</u>, 398 N.W.2d at 901).

C.   Applying the Washington Standard


1. Identifying What Body Function Was Impaired


Plaintiff has provided sufficient evidence of the injuries she sustained such that a jury could identify the impairment.  Injuries include "multiple [permanent] disc bulges at C4-5, C5-6, C6-7, T7-8, T9-10, T10-11, T11-12, T12-L1 and L2-3."  Letter from Doctor Mazlin.  In addition, Plaintiff has provided evidence to show that "the accident caused sprain injuries to her neck (cervical spine), upper back (thoracic spine), and lower back (lumbar spine) which are now permanent, and represent another generator of chronic pain."  Id. Furthermore, Plaintiff alleges specific impairments in her left arm and her back.  Accordingly, Plaintiff has satisfied the first step under Washington and identified what body function was impaired because of injuries sustained in a motor vehicle accident.  Washington, 719 A.2d at 740.


2. Determining Whether the Impairment Was Serious


The Court will next perform the second step in the Washington inquiry and determine whether reasonable minds could find that the impairment was serious.  Washington, 719 A.2d at

15

740.  Both the Plaintiff and the Defendant point the court towards Pennsylvania cases as examples of what types of injuries have sufficed, or not sufficed, as serious injuries under Pennsylvania law.  Accordingly, the Court will examine Pennsylvania case law to determine what types of injuries have, historically, been sufficient or insufficient to survive a motion for summary judgment.

In Washington, the seminal case on serious injury under the PMVFRL, the Pennsylvania Supreme Court found that the plaintiff did not suffer from a serious injury.  Washington, 719 A.2d at 741.  His initial injuries were mild and he was released from the hospital after only a few hours.  Id.  In summarizing his injuries the Pennsylvania Supreme Court stated:

> [Plaintiff] missed only four or five shifts at both his full-time and part-time jobs, where he was required to perform most of his work while on his feet.  Also, the treatment for his injuries was not extensive.  Finally, although some type of arthritis or coalition is affecting one of the joints in Appellant's right foot, the injury seems to have had little or no impact on Appellant's performance of his job functions and engagement in personal activities.  Therefore, although the evidence, when taken in the light most favorable to Appellant, does show that he was injured in the accident, the impairment resulting from that injury is clearly *de minimis.*

Id. (emphasis in original).  The only limitation on his personal activities appeared to be the need to utilize a "riding mower" to cut his grass and he was otherwise "able to engage in his normal daily activities."  Id.

16

In McGee v. Muldowney, the plaintiff established that he had "suffered some injuries to his back and shoulder" but failed to "establish that [those] injuries resulted in such substantial interference with any bodily function as to permit a conclusion that the injuries . . . resulted in a serious impact on his life for an extended period of time." McGee v. Muldowney, 2000 PA Super 116, 750 A.2d 912, 915 (Pa. Super. Ct. 2000). The McGee court's decision that Plaintiff had not suffered a serious injury rested on several factors. See id. Among those factors was that the plaintiff "was examined and treated on several occasions during the six months following the accident, but did not seek any medical attention (except for the [doctor's] visits . . . on December 20, 1993, and May 31, 1994) during the next five and one-half years." Id. Furthermore, the plaintiff was employed full time and although he "shun[ned] certain lifting tasks" his employer was not aware of the limitation. Id. Accordingly, the court found that summary judgment for the defendant was warranted because the plaintiff had "failed to present objective medical evidence as to the degree of any impairment and extent of any pain suffered during the five years preceding . . . the motion for summary judgment." Id. Furthermore, the "subjective allegations presented by [the plaintiff], in the absence of objective medical evidence, [did]

not permit a finding that appellant suffered the requisite 'serious injury.'" Id.

By contrast, in Kelly v. Ziolko, the Superior Court found that the Plaintiff had provided sufficient evidence of a serious injury.[7]  See Kelly v. Ziolko, 734 A.2d 893, 901 (Pa. Super. Ct. 1999).  The court found that an impairment of a bodily function was present where plaintiff "sustained injuries to his neck, lower back, and suffered numbness in his face and toes."  Id. at 899.  To determine if the impairment was serious, the court looked at the following factors:

> [Plaintiff] suffered pain in his neck, back, and knees, and intermittent numbness in two toes on his left foot.  [F]ollowing the accident he was taken to Good Samaritan Hospital's Emergency Room where he was given a soft collar for his neck and discharged less than two hours later in stable condition.  [H]e [underwent] a course of physical therapy and . . . an MRI which indicated that he suffers from a herniated disk.  He was subsequently put on pain medication and voluntarily sought and received treatments for his injured back from a local chiropractor.  He described his daily discomfort in his lower back as a "dull, achy pain." He has knee pains approximately once a week.
> [The plaintiff] further asserted that his back pain occurs as a result of physical activity or sitting for long periods of time; he has trouble sleeping, cannot run, is unable to walk or sit for longer than 15 minutes, and finds it difficult to play with his child.  He also contends that he is no longer able to . . . rid[e] his mountain bike, riding his motorcycle,

---

[7]     The Kelly case was decided on remand from the Pennsylvania Supreme Court.  In the original decision, the Superior Court had affirmed the Court of Common Pleas finding that Plaintiff did not have a serious injury.

[or] hunt[]. . . . [The plaintiff] returned to work only three days after the accident; he was able to return to his full work duties within a short period of time.  Part of his work duties included lifting drywall and performing carpentry-related tasks.  Clinically, [the plaintiff] sought follow-up medical treatment from the effects of the accident three weeks following said accident.  Furthermore, . . . the doctor who diagnosed his herniated disk did not recommend surgery.  [The plaintiff] voluntarily sought chiropractic treatment for his back injuries.  [His] treatment during recovery involved physical therapy, the use of a TENS unit, and exercise.
[He] remain[ed] gainfully employed in his former occupation with minor limitations on lifting heavy objects.  Although he claim[ed] he is restricted in his recreational activities, he receive[d] no treatment or prescriptive medication for his pain.
With regard to the extent of his impairment, one of [his] physicians testified that because he continues to experience pinching sensations in his leg from the herniated disk, this condition is most likely permanent.  Depending upon the level of heavy activity he performs in the future, his condition may stabilize or worsen over time.

Id. at 899-900 (internal footnotes and citations omitted).

     The Kelly court held that "the trial court erred in determining that [the plaintiff] did not sustain serious bodily injury and that there was no need for the issue to go to a jury."  The court explained that the case presented a "less clear-cut picture of the seriousness of the plaintiff's injuries" than previous cases but that it should go to a jury because "reasonable minds [could] differ as to whether the plaintiff sustained a serious injury."  Id. at 900.

     Consistent with the approach taken in Kelly, in Grahm v. Campo, the Superior Court affirmed the Court of Common Pleas'

finding that the plaintiff had suffered a serious injury.
Graham v. Campo, 990 A.2d 9, 17 (Pa. Super. Ct. 2010).  In
Grahm, the plaintiff "sustained a continued C7–C8–T1 nerve root
injury, strains and sprains in her cervical, thoracic, and
lumbar regions, and a possible brachial plexopathy and ulnar
neuropathy."  Id.  Medical testimony at trial revealed that the
plaintiff's injuries would "[a]ffect her on a daily basis [in]
her ability to reach, grasp, to use her arm on any repetitive
basis" and that such injuries were permanent.[8]  Id. at 17.  The
plaintiff "testified that her injuries not only restrict her
from her active life and her normal routine of exercising at the
gym, but keep her from accomplishing ordinary tasks such as
chores, self-maintenance, cooking, and driving."  Id. at 12.
For instance the plaintiff's "injuries restrict[ed] her from
doing daily activities such as vacuuming, washing her hair,
styling her hair, getting dressed, putting on jewelry, mixing
and cooking, driving, typing, taking spinning classes, and
lifting her granddaughter. Her injuries also cause[d] her to be
overly cautious in general motions as lifting or pulling."  Id.
at 17.  Accordingly, the Superior Court found that "the trial

---

[8]      That injuries are permanent, however, is not a
requirement for them to constitute serious injuries.
Washington, 719 A.2d at 740 (citing DiFranco, 398 N.W.2d at
901).

court did not err in awarding her non-economic damages" because the plaintiff had suffered a serious injury.  Id.

In the case sub judice, Plaintiff presents sufficient evidence that the fact finder could determine that the resulting impairments have been significant and have severely limited both her professional and personal activities.  Plaintiff alleges she was unable to continue in her previous position as Director of Occupational Therapy.  See Pl.'s Dep. 24:19-25:15.  Since then plaintiff has held a number of jobs as an "occupational therapy assistant."  Id. at 47:1-48:10.  These positions have been generally temporary, and she now makes $30,000 less than she previously did.  Id. at 40:6-48:17.  The resulting decrease in opportunities has come because, according to Plaintiff, her injuries limit her abilities to perform her job including, for instance, the lifting of patients.  Id.  Plaintiff demonstrates that she no longer enjoys the same well-rounded social life that she once did and virtually every aspect of her life has been impacted in some way.  Id. at 118:1-120:16.  One impairment of a bodily function is that she is often unable to use her left hand to manipulate objects.  Id. at 115:19-23.

In addition, Plaintiff's medical treatment has been ongoing.  Her treatment has included the use of pain killers, MRIs and other diagnostic imaging, neurologic care, yoga, water exercise, and frequent voluntary visits to a chiropractor.  See

id. at 104:12-22, 118:1-119:2, 155:23-116:5.  Plaintiff has
indicated a desire for even more medical care but her decreased
financial resources prevent her from doing so.  See id. at
101:20-103:3.

     The Court finds that, in comparing the injuries of
Plaintiff to those of the plaintiffs in the cases cited above,
it cannot be said that "reasonable minds" could not come to the
conclusion that Plaintiff has suffered a serious injury.
Plaintiff's alleged impairments are clearly greater than those
of the plaintiff in Washington who missed only four or five
shifts of work and needed to use a ride-on lawnmower in order to
cut his grass.  See Washington, 719 A.2d at 741.  Additionally,
it is obvious that the Plaintiff's injuries are greater than the
injuries in McGee.  In McGee, the plaintiff's employer was
unaware of the solitary limitation on his employment.  See
McGee, 750 A.2d at 915.  Plaintiff, in the present case, claims
she had to change her career, and it is obvious that her
employers have been aware of her post-accident limitations and
impairments. Furthermore, unlike in McGee, Plaintiff here has
been seeking frequent and voluntary medical care, unlike in
McGee where the plaintiff only saw a doctor twice in five years.
See id.  Plaintiff requires, and desires, even more medical
attention but cannot received it due to her decreased salary and
lapses in insurance coverage; both of which she claims come as a

result of her changed employment situation following the
accident.[9]

Plaintiff's injuries are more in line, if not greater
than those evidenced in Kelly, and come close to those shown in
Grahm.  See Kelly, 734 A.2d at 899-900.  In both Kelly and the
case here, the impairments include back injuries accompanied by
pain and numbness.  Both cases show only short hospital stays
followed by a return to work.  In both cases, the plaintiff has
been voluntarily seeking chiropractic care, and has had a
significant decrease in recreational activity. [10]  In the present
case, however, Plaintiff could no longer continue in her
previous position or carry out her work related
responsibilities, while the plaintiff in Kelly was able to
continue with his previous job.  Given that the injuries in
Kelly were enough to survive a motion for summary judgment on
the matter of serious injury, and Plaintiff's injuries are at

---

[9]     Martin Defendants would like the Court to consider
that because Plaintiff has not received more medical attention,
it is evidence that Plaintiff is not seriously injured.  See
Defs.' Br. Supp. Summ. J. at 5-6.  The Court finds that
Plaintiff's medical treatment has been sufficient, especially
given the emphasis the Kelly court gave to voluntarily seeking
chiropractic care.  Kelly, 734 A.2d at 899-900.  Additionally,
Plaintiff contends that her ability to receive medical treatment
has been limited as a result of the accident.

[10]     That the plaintiff in Kelly could no longer run,
whereas Plaintiff here is still able to engage in some decreased
and painful running should is not dispositive.

least as great as, if not greater than the injuries in <u>Kelly</u>, the Court will deny Defendants' Motion for Partial Summary Judgment.[11]

## V.   CONCLUSION

The Court will deny Defendant's motion for partial-summary judgment on the issue of serious injury because Defendant has failed to show that "reasonable minds could not differ on the issue of whether a serious injury had been sustained," and Plaintiff has provided sufficient evidence for which a jury could find what body function was impaired and that the impairment was serious (including medical testimony). Plaintiff should be permitted, at trial, to attempt to recover non-economic damages provided she can prove to the jury that she has suffered a serious injury.

For the reasons set forth above, the Court will deny the Motion and an appropriate order will follow.

---

[11]    Plaintiff's injuries come quite close to those in <u>Grahm</u>.  In <u>Grahm</u>, the court found that evidence was sufficient to grant summary judgment to plaintiff on the issue of serious injury.  Whether Plaintiff has put forth enough evidence to establish that she is entitled to partial summary judgment on the issue of serious injury, however, is not a determination the Court needs to make at this time.